IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROY EDWARD JACKSON,

No. 3:15-cv-00404-HZ

                Plaintiff,

OPINION & ORDER

    v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

                Defendant.

Merrill Schneider
Schneider Kerr Law Offices
P.O. Box 14490
Portland, OR 97293

        Attorney for Plaintiff

Billy J. Williams
Janice E. Hebert
United States Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, OR 97204

///

1 – OPINION & ORDER

L. Jamala Edwards
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Roy Jackson seeks judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.  The ALJ erred at step two of the sequential disability analysis, and the error was harmful. The Court, therefore, reverses the Commissioner's decision and remands Jackson's case for further proceedings consistent with this opinion.

## PROCEDURAL BACKGROUND

      Plaintiff filed an application for DIB on August 26, 2011, and he alleged a disability onset date of June 1, 2009.  Tr.[1] 17, 142–150.  The Commissioner denied the claim initially and upon reconsideration.  Tr. 17, 60–73, 74–89.  Plaintiff filed a written request for a hearing before an Administrative Law Judge ("ALJ"), at which Plaintiff appeared and testified.  Tr. 17, 102, 36–59.  Shortly thereafter, the ALJ found Plaintiff not disabled.  Tr. 14–35.  The Appeals Council denied review, making the ALJ's determination the Commissioner's final decision.  Tr. 1–4.

## FACTUAL BACKGROUND

      Plaintiff was 50 years old on the date he alleges onset of disability.  Tr. 60.  His past work experience includes janitorial, unarmed security, and small engine repair.  Tr. 19.  Plaintiff alleges disability based on seizures, depression, memory loss, and alcohol dependency.  Tr. 19–

---

[1] "Tr." refers to the page(s) indicated in the official transcript of the administrative record.  This record appears as Docket No. 14.

22, 60–73.  The ALJ also found that Plaintiff suffers from adhesive capsulitis and bicep

tendonitis in the left shoulder, as well as post traumatic stress disorder ("PTSD").  Tr. 19–20.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if he or she is not able to "engage in substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423

(d)(1)(A).  Claims are evaluated according to a five-step sequential disability analysis.  Valentine

v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009).  The burden is on the claimant during the first

four steps of this analysis.  Id.

First, the Commissioner determines whether a claimant is engaged in "substantial gainful

activity."  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).

If so, the claimant is not disabled.  If the claimant has not engaged in substantial gainful activity,

the analysis progresses to step two, where the Commissioner determines whether a claimant has

a "medically severe impairment or combination of impairments."  Yuckert, 482 U.S. at 140–141;

20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.  If so, the analysis

continues to step three.

Third, the Commissioner makes the determination whether the impairment meets or

equals "one of a number of listed impairments that the [Commissioner] acknowledges are so

severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at 141; 20 C.F.R. §§

404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed to be disabled.  If not, the

analysis proceeds to step four.  Fourth, the Commissioner determines whether the claimant,

despite his or her impairments, has the residual functional capacity ("RFC") to perform past

relevant work.  Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant

can perform past relevant work, he or she is not disabled.  If not, the analysis proceeds to step five.

In the final step, the burden shifts to the Commissioner to establish whether the claimant can perform other work that exists in the national economy.  <u>Yuckert</u>, 482 U.S. at 141–142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e)7(f).  If the Commissioner can do so, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.  If the Commissioner fails to prove that the claimant could perform such work, the claimant is disabled.

## THE ALJ DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between the alleged disability onset date and September, 30, 2012.  Tr. 19.  At step two, the ALJ determined that Plaintiff had the following severe medically determinable impairments: seizures controlled by medication and a history of drug and alcohol abuse.  Tr. 19.  At step three, the ALJ found that Plaintiff's severe impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 23.  Next, the ALJ determined that Plaintiff "had the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c).  He should never climb ladders, ropes, or scaffolds; he should avoid even moderate exposure to hazards and heights; and he should not drive or operate heavy machinery."  Tr. 23.  At step four, the ALJ found Plaintiff had no past relevant work.  Tr. 29.  Finally, at step five, the ALJ found that there were jobs in significant numbers in the national economy that Plaintiff could perform.  Tr. 29.  The vocational expert testified that Plaintiff could perform medium exertion work, such as a tool equipment clerk or a hand packager.  Tr. 29.  Thus, the ALJ found that Plaintiff was not disabled.  Tr. 30.

///

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence means "more than a mere scintilla but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (citing Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray, 554 F.3d at 1222.

The court must consider the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its own judgment for that of the Commissioner. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant, as long as the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193. "Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ[.]" Bray, 554 F.3d at 1225–1226 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

**DISCUSSION**

A.    Step Two

Plaintiff contends that the ALJ erred at step two when he determined that Plaintiff's depression was non-severe and that his PTSD was not medically determinable. Step two of the five-step disability inquiry is a de minimis screening used to eliminate groundless claims.

Yuckert, 482 U.S. at 153–154 (1987); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996);

see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (holding that ALJ should have

continued the sequential disability analysis beyond step two because there was not substantial

evidence showing that the plaintiff's claim was groundless).  An impairment or combination of

impairments can be determined "not severe" only if evidence establishes a slight abnormality

that has "no more than a minimal effect on an individual's ability to work."  SSR 85–28, 1985

WL 56856, at *2.  If the ALJ determines that the mental impairment is a severe medically

determinable one, the analysis proceeds to step three.  Keyser v. Commissioner Social Sec.

Admin., 648 F.3d 721, 725 (9th Cir. 2011).

Further, because Plaintiff claims at least one mental impairment, the ALJ must use the

"special psychiatric review technique" referred to in 20 C.F.R. § 404.1520a.  This technique

requires the ALJ to first decide whether the mental impairment is medically determinable by

evaluating signs, symptoms, and laboratory findings.  20 C.F.R. § 404.1520a(b).  Next, the ALJ

must determine whether the impairment is severe by assessing the degree of functional limitation

as indicated by four broad categories: "[a]ctivities of daily living; social functioning;

concentration, persistence, or pace; and episodes of decompensation."  20 C.F.R. § 404.1520a(c).

1.      Depression

The ALJ found that depression was not severe because Plaintiff's symptoms improved

with medication, and Plaintiff did not follow up on mental health treatment.  However, neither is

a sufficient reason for finding Jackson's depression was not severe.  Thus, the ALJ erred in this

determination.

First, depression is a mental impairment, and fluctuations and occasional improvements

are not sufficient reasons for an ALJ to find depression non-severe.  Allen v. Astrue, No. CV 09-

1787-DTB, 2010 WL 454371, at *2 (C.D. Cal. Feb. 8, 2010);  see also Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) (emphasizing that fluctuation of symptoms in the course of treatment is not a sufficient reason for an ALJ to find that a mental impairment is not severe). Plaintiff reported experiencing symptoms of depression in 2011, and he was diagnosed in that same year.  Tr. 236, 439, 226.  Doctors also prescribed medication in 2011.  Tr. 248, 439.  He reported decreased symptoms with medication.  Tr. 288.  A treatment provider also noted that he appeared to have decreased symptoms.  Tr. 304.  However, he was again diagnosed with depression in 2012.  Tr. 478.  Again, in 2013, Dr. Schier noted that Plaintiff appeared depressed. Tr. 487.  It is error for an ALJ to select instances of improvement and use them, outside the context of the record as a whole, to conclude that the claimant's mental impairment is not really as severe as the claimant says.  Burden v. Colvin, No. 6:14-cv-00499-HZ, 2015 WL 4772895, at *4 (D. Or. Aug. 12, 2015) (citing Garrison, 759 F.3d at 1017).  Thus, the ALJ erred in using Plaintiff's fluctuating symptoms as a basis to conclude that the depression was non-severe.

Second, in the case of mental impairment, failure to participate in follow-up treatment is not a sufficient reason to find that the impairment is not severe.  Watkins v. Comm'r, Soc. Sec. Admin., No. 3:14-cv-01753-HZ, 2016 WL 184425, at *7 (D. Or. Jan. 15, 2016).  In fact, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996); see also Balladarez v. Colvin, No. CV 13-9490-MAN, 2014 WL 7185342 (C.D. Cal. Dec. 16, 2014) (indicating that failing to seek consistent treatment for a mental impairment is not relevant to the step two analysis).  Therefore, the ALJ erred when relying on Plaintiff's failure to seek follow-up treatment in finding his depression non-severe.

///

Finally, the ALJ's conclusion that depression was non-severe is not supported by substantial evidence in the record. Numerous medical providers have diagnosed Plaintiff with depression and prescribed him medication to alleviate his symptoms. Tr. 226, 248, 439, 478. Plaintiff also testified before the ALJ that he had severe symptoms of depression and indicated that he, at some point, had suicidal thoughts. Tr. 48. Two lay witnesses testified as to Plaintiff's depression and mood swings. Tr. 28. Despite this objective medical evidence, Plaintiff's testimony, and lay testimony, the ALJ found that Plaintiff's depression was non-severe. The ALJ erred. See Lasso v. Colvin, No. CV 14-8247-KK, 2015 WL 5838463, at *6 (C.D. Cal. Oct. 5, 2015) (holding that ALJ erred in finding the plaintiff's depression non-severe despite objective medical evidence, plaintiff's testimony, and lay testimony concerning the plaintiff's depression).

> 2.    PTSD

The ALJ found that Plaintiff's PTSD was not medically determinable because it was not supported by objective medical evidence of the symptoms, Plaintiff did not report symptoms in 2011, and he was not diagnosed by a mental health professional. These are insufficient reasons to find that PTSD was not medically determinable, and thus, the ALJ erred.

First, two of Plaintiff's treating physicians have diagnosed him with PTSD. Dr. Schier, Plaintiff's treating physician for two years, diagnosed him with PTSD in 2012. Tr. 350. Dr. Higa corroborated this diagnosis in 2013. Tr. 497. In attempting to treat Plaintiff's ongoing problems with seizures, other medical professionals have opined that Plaintiff may be suffering from "psychogenic fugue states" caused, in part, by his history of severe PTSD. See Tr. 337, 439, 487, 495. The repeated discussion of Plaintiff's PTSD symptoms throughout the medical record is not surprising, given that he apparently worked for private security contractors in Libya and Iraq, and he reports seeing "colleagues butchered [and] hung," and that he killed civilians.

Tr. 350.  He complained several times to doctors that he suffered from "sleep disturbances,"
"disorientations," and "hallucinations."  E.g., Tr 342.  Plaintiff entered a "trauma-focused
cognitive behavioral therapy" to assist him in coping with his PTSD.  Tr. 489.  Dr. C. Mitchell
Finch, a neurologist at Providence Neurology Associates, noted that Plaintiff suffered from
"severe PTSD."  Tr. 339.  Plaintiff's roommates reported to doctors that he had PTSD
symptoms, such as "tend[ing] to patrol the house at night, making sure multiple times that all the
doors are locked."  Tr. 337.  Plaintiff also reported to doctors that he has "regular nightmares,"
Tr. 494, which directly contradicts the ALJ's conclusion that his medical records "[did] not
indicate that the claimant has reported . . . symptoms consistent with [PTSD] such as recurrent
panic attacks or nightmares . . . ."  Tr. 20.

The ALJ  failed to mention any of this evidence. Instead, the ALJ appeared to simply
disagree with the numerous doctors who have diagnosed Plaintiff with PTSD.  It is error for an
ALJ to substitute his own judgment for that of a medical professional.  Conger v. Astrue, No.
C11–653–RSM–BAT, 2012 WL 966074, at *5 (W.D. Wash. Jan. 12, 2012) (citing Tackett v.
Apfel, 180 F.3d 1094, 1102–1103 (9th Cir. 1999)).

Next, the ALJ also found that Plaintiff had demonstrated no symptoms in 2011 and
asserted that, for this reason, PTSD was not medically determinable.  It is plainly an error, as
discussed above, for an ALJ to selectively choose one medical report that does not include a
mention of PTSD and completely ignore the substantial evidence in the record as a whole that
Plaintiff is suffering from severe psychological stressors that doctors have struggled to diagnose
and treat.  Burden, 2015 WL 4772895, at *4; Garrison, 759 F.3d at 1017.

In addition, the ALJ opined that, because a mental health professional did not diagnose
Plaintiff with PTSD, the PTSD was not medically determinable.  A primary care physician's

opinion constitutes "competent psychiatric evidence, based on clinic observations of the claimant's alleged mental impairment, because such physicians are qualified to give a medical opinion as to [a claimant's] mental state...even though [the physician] is not a psychiatrist." Jenkins v. Astrue, No. C10-891-RAJ-JPD, 2011 WL 722184, at *5 (W.D. Wash. Jan. 19, 2011) (internal quotations and citation omitted).  Therefore, the fact that a mental health professional never diagnosed Plaintiff's PTSD is not a legitimate reason to find PTSD not medically determinable at step two.

      B.    Harmful Error

      Having found that the ALJ erred at step two, the next question is whether this error was harmful, thus requiring the Court to remand, or harmless, thus requiring it to affirm.  Error is harmless only if it is "inconsequential to the ultimate determination."  Robbins, 466 F.3d at 885; Stout v. Commissioner, 454 F.3d 1050, 1055–1056 (9th Cir. 2006).  Often, an error at step two is harmless if the ALJ continued the sequential analysis of the plaintiff's claim.  This is because the ALJ must consider all of the claimant's impairments, severe and non-severe, when crafting the RFC.  Langlitz ex rel. Langlitz v. Astrue, No. 3-11-cv-00111-MO, 2012 WL 1920779, at *3 (D. Or. May 22, 2012) (citing Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005)).

      Here, the ALJ found at step two that Plaintiff's depression was not severe and his PTSD was not medically determinable, but the ALJ ultimately decided step two in Plaintiff's favor and continued the analysis.  In crafting the RFC, the ALJ recited the same reasons for finding Plaintiff's depression non-severe.  He noted that Plaintiff's symptoms improved with medication and that he failed to seek follow-up treatment for depression.  Tr. 27.  Despite testimony to the contrary, the ALJ found that Plaintiff's depression was not a severe mental impairment.  Tr. 28. The ALJ also noted that PTSD was not medically determinable because objective medical

evidence did not indicate that Plaintiff has symptoms of PTSD, he did not report symptoms in 2011, and a mental health professional did not diagnose him with PTSD.  Tr. 27.  The RFC stated that Plaintiff "had the residual functional capacity to perform medium work as defined in 20 C.F.R. 404.1567(c).  He should never climb ladders, ropes, or scaffolds; he should avoid even moderate exposure to hazards and heights; and he should not drive or operate heavy machinery." Tr. 23.  All of these limitations are physical in nature and do not address any mental impairments.

As explained above, there is ample evidence in the record that Plaintiff suffered from serious psychological symptoms. The only reasons that the ALJ gave for not incorporating limitations based on Plaintiff's psychological symptoms into the RFC are the same legally insufficient reasons the ALJ gave for rejecting his depression and PTSD as severe impairments at step two.  Because the RFC did not properly account for Plaintiff's non-severe impairments, the ALJ's error was a harmful one.  Langlitz, 2012 WL 1920779, at *3 ("Unless the step three findings or RFC do not adequately account for the non-severe impairments, any error at step two is harmless.").

///

///

///

///

///

///

///

///

## CONCLUSION

In light of the foregoing reasons, the Court reverses the Commissioner's decision and remands the case for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated this  26th    day of April, 2016.

MARCO A. HERNÁNDEZ
United States District Judge